# IN THE COURT OF APPEALS OF IOWA

No. 21-0334
Filed August 4, 2021

**IN THE INTEREST OF B.M. and B.M.**
**Minor Children,**

**B.M., Father,**
    Appellant.
_____


Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.


A father appeals the termination of his parental rights to his children. **AFFIRMED.**

T. Cody Farrens of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Lessman, L.L.P., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena and Diane Murphy Smith, Assistant Attorneys General, for appellee State.

Lori Kolpin, Aurelia, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to his children, born in 2018 and 2019, pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (i) (2020).[1]  He challenges the sufficiency of evidence as to each ground for termination, argues termination is contrary to the children's best interests given the closeness of the parent-child bonds, and requests additional time to work toward reunification.

I.      **Background Facts and Proceedings**

The father has a criminal history largely relating to his aggressive tendencies.  This family came to the attention of the Iowa Department of Human Services (DHS) in April 2018 upon reports of domestic violence between the parents.  In July, there were reports of physical abuse of one of the mother's other children, which were confirmed upon the mother's concession she bit the other child.  In August, the mother reported to DHS the father subjected her and her other child to physical abuse on several occasions between December 2017 and July 2018.  The older child involved in this appeal was born in October 2018.  Concerns for domestic violence continued through the time the State filed a child-in-need-of-assistance (CINA) petition in September 2019, shortly before which the younger child was born.

By October, the mother had discontinued contact with service providers, and it was believed she and the children were residing with the father, who was the subject of charges of child endangerment and domestic abuse assault arising

---

[1] The mother's rights were also terminated.  She does not appeal.

out of his conduct toward the mother and children. The State filed a CINA petition as to the younger child and sought and obtained an order for temporary removal of both children. The mother and children were located in the father's home, and the parents were arrested for violating an active no-contact order. Following an adjudication hearing in November, by which point the father had been charged with second-offense operating while intoxicated and first-degree harassment, the court adjudicated both children CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2019) and ordered continued removal.

The father was arrested for domestic abuse assault against the mother on two separate occasions in March and April 2020, as well as public intoxication in April. The mother reported her continuing concerns for the father's alcohol abuse and domestic violence. This was all in spite of the father's continuing participation in domestic-violence and substance-abuse treatment. In May, DHS recommended the institution of termination proceedings. In its ensuing permanency order, the court agreed and directed the State to do so. The State filed its termination petitions in July.

Also in July, the father was charged with domestic abuse assault, first-degree harassment, fifth-degree criminal mischief, obstruction of emergency communications, third-degree harassment, and three counts of violation of a no-contact order in relation to further incidents between him and the mother. In August, he was again charged with violating a no-contact order, as well as fifth-degree theft. By October, the father was discharged from substance-abuse treatment due to not participating and not contacting his counselor. His counselor reported he would have to start all over in domestic-abuse treatment due to his

new domestic assault charges. The father did not reinitiate treatment until shortly before the termination trial.

Trial commenced in August 2020 but evidence was not received until the second day of trial in February 2021. Ultimately, the court terminated the father's rights under Iowa Code section 232.116(1)(d), (e), (h), and (i) (2020). The father appeals.

## II. Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Analysis

### A. Sufficiency of Evidence

The father challenges the sufficiency of the evidence supporting each of the statutory grounds for termination. "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to focus on Iowa Code section 232.116(1)(h). As to that provision, the father only challenges the State's establishment of the final element—that the children could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *D.W.*, 791 N.W.2d at 707

(interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The father simply argues "there was insufficient evidence the children would suffer adjudicatory harm if returned to" his care. He argues he is engaged in domestic-abuse treatment, so the need for removal no longer exists. But the father does not acknowledge his propensity for violence, domestic or otherwise, and he downplayed the domestically violent nature of his relationship with the mother, testifying there were only ever two instances of domestic violence between him and the mother and he does not consider himself a domestic abuser. He also downplayed his alcohol abuse. Even more troubling is the fact that he continued to engage in acts of violence and abuse alcohol despite participating in treatment aimed at addressing the same. He also argues "there is no opportunity for further domestic disturbances," as he and the mother ended their relationship and her rights were terminated. But evidence was presented showing the parents remained in a relationship during much of these proceedings. At the time of the termination hearing, the mother was pregnant with yet another of the father's children. And the parents clearly communicate frequently, and the mother was observed to give the father rides after his individual visits with the children. The father's current claim the relationship is over is suspect.

Also, the Family Centered Services worker testified to safety concerns during visits with the father, namely giving the children too big of bites of food, "roughhousing" that has resulted in the children slapping others at daycare, and the father not being able to safely supervise both children at once. The worker opined the children would not be safe in an unsupervised setting with the father.

The DHS worker testified the children could not be returned to the father's care at the time of trial or within a reasonable period of time due to the father's lack of progress in relation to alcohol abuse and domestic violence and her resulting concern for the children's safety. We agree.

Upon our de novo review of the record we find the evidence clear and convincing that the children could not be returned to the father's care.

B.      Best Interests and Statutory Exception

The father argues termination is contrary to the children's best interests given the closeness of the parent-child bonds. We choose to separately address the often-conflated best-interests and statutory-exception arguments. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2019) (discussing three-step termination framework); *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (same).

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The father cites his housing, financial stability, and ability to support the children's needs. But those were not the ongoing concerns in the proceedings. The concerns for domestic violence and alcohol abuse were, and concerns for the same remain.

As noted, the defining elements of children's best interests are the children's safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent

will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). The father has been given ample time to get his affairs in order, and these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The children are thriving and integrated into their foster home. Continued stability and permanency in this home is in these children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children). These children should not have to wait any longer for permanency; they are entitled to immediate constant, responsible, and reliable parenting. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). Because termination followed by adoption will satisfy these children's need for a permanent home, we conclude termination is in their best interests.

As to the parent-child bonds, Iowa Code section 232.116(3)(c) allows the juvenile court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We first note the application of the statutory exception to termination is "permissive, not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). While we acknowledge bonds between the father and children, they can only be

characterized as limited given the children's young age and removal from the father's care for most of their lives. We find the evidence insufficient to show "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship[s]." *See A.S.*, 906 N.W.2d at 476 (noting the parent resisting termination bears burden to establish exception to termination). We therefore decline to apply the statutory exception to termination. Alternatively, we conclude application of the exception would be contrary to the children's best interests.

### C. Additional Time

The father requests additional time to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

The father simply argues he should have been granted additional time because he was engaged in services that would correct the situation. He points to the primary issues of domestic violence and alcohol abuse and says his continued participation in treatment aimed at the same will alleviate the need for removal. But the father participated in those programs throughout the proceedings, and the situation did not improve. He then disengaged in those programs in October 2020 and did not reengage until January 2021, shortly before

the termination hearing the following month. Upon our review, we are unable to conclude the need for removal from the father's care would no longer exist after an extension, and we decline his request for an extension.

**IV.  Conclusion**

We affirm the termination of the father's parental rights.

**AFFIRMED.**